**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARY WALBURN, *et al.* | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:19 cv 00711 |
| | : | |
| | : | JUDGE SARAH D. MORRISON |
| vs. | : | |
| | : | Magistrate Judge Vascura |
| | : | |
| LEND-A-HAND SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

**JOINT MOTION FOR ORDER OF FINAL APPROVAL OF**
**CLASS AND COLLECTIVE ACTION SETTLEMENT**

Now come Class Representative Plaintiffs Mary Walburn, Johnathan Bailey, Misty Hall, Jill Hollett, Megan Hughes, Allison Mitchell, Jessica Roth, Joshua Sliker and Brandy Wollard ("Class Representatives") and Defendant Lend-A-Hand Services, LLC ("Defendant"), by and through counsel, and move the Court for entry of an Order of Final Approval of the class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to 29 U.S.C. § 216(b).  Detailed information in support of the Parties' request is set forth in the accompanying Memorandum.

Respectfully submitted,

/s/ *Greg R. Mansell*
_____
Greg R. Mansell (0085197)
*Greg@MansellLawLLC.com*
Carrie J. Dyer (0090539)
*Carrie@MansellLawLLC.com*

/s/ *Meghan E. Hill*
_____(via email authority)_____
Meghan E. Hill (0078183)
Shennan Harris (0091514)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center

Kyle T. Anderson (0097806)
*Kyle@MansellLawLLC.com*
Mansell Law, LLC
1457 S. High St.
Columbus, Ohio 43207
Phone: (614) 610-4134
Fax: (614) 547-3614
**Attorneys for Plaintiffs**

41 South High Street.
Columbus, OH 43215
Telephone: +1.614.365.2700
Fax: +1.614.365.2499

meghan.hill@squirepb.com
shennan.harris.squirepb.com
**Attorneys for Defendant**

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT**

## I.    INTRODUCTION

The detailed background and procedural history of this matter are set forth in the Parties' Joint Motion for Order Preliminarily Approving the Settlement (Doc. No. 42), which is incorporated herein by reference.

On May 26, 2020, this Court granted the Parties' Joint Motion for Order Preliminarily Approving the Settlement and setting a Final Approval Hearing for August 14, 2020. (Doc. No. 46)  Thereafter, Notice was timely sent out pursuant to the terms of the Settlement Agreement (Doc. No. 42-2) and this Court's Order (Doc. No. 46).  The claim submission period has now ended and now the matter is ripe for Final Approval.

The parties respectfully submit that their proposed settlement is a fair, reasonable, and adequate resolution of this litigation.  As such, the parties ask that this Court enter an Order as set forth in the Proposed Order Granting Final Approval of Class and Collective Action Settlement, attached hereto as Exhibit A.

## II.    FACTUAL BACKGROUND SINCE PRELIMINARY APPROVAL

On April 22, 2020, the parties filed a Joint Motion for Order Preliminarily Approving the Settlement. (Doc. No. 42) On May 26, 2020, this Court granted the Parties' Joint Motion for Order Preliminarily Approving the Settlement and setting a Final Approval Hearing for August 14, 2020. (Doc. No. 46)   The Court preliminarily certified a 216(b) class and Rule 23 class and directed that notice be sent.  (Doc. No. 46, PageID# 313)

After this Court granted the Joint Motion for Order Preliminarily Approving the Settlement, the Parties provided the Administrator with a list of the names, last known addresses, and social security numbers of all Section 216(b) Plaintiffs and Rule 23 Class Members.

(Declaration of Greg R. Mansell ¶2, attached hereto as Exhibit B) On June 8, 2020, the Administrator mailed the Court approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing, the Settlement Claim Form, and Release of Claims to the twenty-nine (29) Rule 23 Class Members (excluding the Section 216(b) Plaintiffs). *Id*. at ¶3.  Also on June 8, 2020, the Administrator mailed the Court approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to all twenty-four (24) Section 216(b) Plaintiffs. (*Id*. Five Notices were returned undeliverable and were remailed by the Administrator. *Id*.

The Rule 23 Class Members had thirty (30) calendar days from June 8, 2020, or twenty (20) calendar days from the date the Administrator resent the notice following a skip trace for individuals with notices returned for insufficient or improper addresses, to return a signed copy of the Settlement Claim Form to the Administrator.  (Settlement Agreement, ¶3.2(B), Doc. No. 42-2)  At the close of the period, five (5) individuals had timely returned a properly executed copy of the Settlement Claim Form: (1) Raymond Coleman; (2) Kyle Katz; (3) Kamara Saidu; (4) Sharon Thompson (Ward), and; (5) Maranda Mason. (Ex. B, Mansell  Dec. ¶4) Accordingly, the total number of individuals receiving payment under the Settlement Agreement equals twenty-nine (29). *Id*. at ¶5. Notably, no Rule 23 Class Members objected to or opted out of the proposed settlement.  *Id*. at ¶6.

## III.   LAW AND ARGUMENT

### A.   Final Approval of the Settlement is Appropriate.

The determination of whether a proposed class settlement is fair, reasonable, and adequate requires the Court to consider and balance several factors:

• Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

- The complexity, expense and likely duration of the litigation;

- The stage of the proceedings and the amount of discovery completed;

- The judgment of experienced trial counsel;

- The nature of the negotiations;

- The objections raised by the class members; and

- The public interest.

*In re Telectronics Pacing Sys*., 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001); *Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240, 245 (S.D. Ohio 1991). In the end, the Court's determinations are no more than "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *City of Detroit v. Grinnell*, 495 F.2d 448, 468 (2d Cir. 1974)).

### 1. *Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement*

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Defendant asserted various factual, legal, and procedural defenses to Class Representatives' claims. Class Representatives face potential decertification of their collective action and denial of certification of their class claims. Moreover, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Defendant acted in good faith and Class Representatives fail to establish a willful violation of the law. What's more, an individualized process to determine the amount of recovery for each Class Member could take many months to resolve, after which an appeal could be filed. On the other hand, Defendant faces the prospect of class-wide liability for current and former employees, as well as liquidated damages and attorneys'

fees following lengthy and expensive litigation.  These considerations all support approval of the settlement.

### 2. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.*

This settlement also serves the laudable goal of eliminating the costs and time attendant to continued litigation. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving a class action settlement because, in part, the settlement "will alleviate . . . the extraordinary complexity, expense and likely duration of this litigation"). Generally speaking, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and especially wage-and-hour cases, are expensive and time-consuming.  Moreover, the parties continue to disagree over the merits of Class Representatives' claims.  Defendant maintains that its payroll policies did not violate the law, and that Defendant was simply paying its employees in the way that Medicaid reimbursed Defendant— by paying employees different rates based upon the amount of time they were awake versus asleep (or "on site on call"). While Defendant has, for the purposes of settlement, agreed to class certification, if the litigation proceeds, it has expressed an intention to oppose certification on the grounds that that some Class Members did not need to be compensated for sleep time either because they are family/household members and constitute live-in domestic service employees, or because they regularly worked shift of 24 hours or more.    Thus, Defendant contends that what

constitutes "hours worked" for purposes of overtime compensation varies among these Class Members.

In addition, the parties disagree as to whether the two-year limitations period for non-willful violations or a three-year limitations period for willful violations applies.  Defendant claims that even if the Section 216(b) Class Members succeed on the merits, they cannot prove a willful violation of the law, and thus, only a two-year limitations period would apply.  Further, Defendant asserts, because it acted in good faith, no liquidated damages should be awarded even if the Class Members are able to prevail on their claims.

Thus, if forced to litigate this case further, the parties would engage in costly, risky, and protracted litigation.  The settlement, on the other hand, provides substantial relief to the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class-wide resolution.

### 3. *The stage of the proceedings and the amount of discovery completed.*

To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered. See *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000).

The parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Prior to filing the lawsuit, Class Counsel performed a significant amount of factual investigation into the claims.  After Class Representatives filed the lawsuit, Class Counsel analyzed tens of thousands of payroll records, timesheets, and paystubs to calculate damages.  The parties engaged in a full day mediation on February 4, 2020, which resulted in a settlement

agreement covering all claims asserted in the lawsuit. In addition, the legal issues were thoroughly researched by the parties and the value of the claims properly assessed.

### 4. *The judgment of experienced trial counsel.*

The Court gives significant weight to the belief of experienced counsel that the settlement is in the best interest of the class. See *In re Telectronics Pacing Sys*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (citing *Fanning v. AcroMed Corp*. (*In re Orthopedic Bone Screw Prods. Liab. Litig*.), 176 F.R.D. 158, 184 (E.D. Pa. 1997)). The parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this settlement. And, for the reasons set forth herein, Class Counsel is of the opinion that the settlement is a fair, reasonable, and adequate resolution of this litigation. Likewise, the Representatives Plaintiffs, who participated in mediation either in person or through Class Counsel, agree that the settlement is fair and reasonable, and they assent to the terms of the settlement.

### 5. *The nature of the negotiations.*

The parties reached a settlement in this case following more than a year of litigation and after a full-day of arms-length mediation with Magistrate Judge Abel. There are no indicia of fraud or collusion before the Court. See *TBG, Inc. v. Bendis*, 811 F. Supp. 596, 605 (D. Kan. 1992) (finding a settlement fair in the absence of collusion where the settlement was the result of arm's length negotiations that were hard fought).

### 6. *The objections raised by the class members.*

Class Members were given the opportunity to object to or opt-out of the settlement. No class members have submitted an objection or opted out of the settlement. In addition, the 16.67% (5 of 30) return rate of settlement claim forms is a strong showing of support for the settlement.

Settlements with much lower percentage of class members returning their claim form are frequently approved. See *In Re Packaged Ice Antitrust Litigation*, No. 08-mdl-01952, 2011 WL 6209188 at *14 (E.D. Mich. Dec. 13, 2011) (finding a 1% response rate out of the total number of notices mailed acceptable); *see also Touhey v. United States*, No. edcv 08–01418, 2011 WL 3179036, at *7–8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable--38 responses out of 1,875 notices mailed--where there were no objections and the overall recovery was fair and reasonable); *In Re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding favorable class reactions in a 6.9% response rate (1800 proofs of claim out of 26,000 notices sent) and a 9% response rate (37,000 proofs of claim out of 400,000+ notices sent)); *In re New Motor Vehicles Canadian Export Antit. Litig*., MDL No. 1532, 2011 WL 1398485 at *3 (D. Maine Apr. 13, 2011) (finding favorable class reaction in a 3.9% response rate (438,169 claims out of 11.3 million eligible claimants)). Additionally, courts have recognized that many factors affect response rates, especially when the claims settled are relatively modest, as here. *See In re New Motor Vehicles Canadian Export Antit. Litig.,* 2011 WL 1398485, at *3; *In Re Serzone Pdcts. Liability Action*, 231 F.R.D. 221, 235-36 (S.D. W.Va. 2005). Therefore, the 16.67% return rate of Settlement Claim Forms here, the lack of Opt-Outs, and the lack of any objectors is strong objective evidence that the settlement was well received by the Rule 23 Class Members.

### 7. *The Public Interest Favors Approval.*

Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. *Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), *quoting Lynn's Food Stores, Inc. v. U.S. By &*

*Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1992).  Settlement agreements assure that plaintiffs will receive compensation for the alleged violations at issue.  As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." *Edwards*, 2016 U.S. Dist. LEXIS 64159 at *10.

The same is true here.  The settlement promotes public interest by providing fair and efficient payments to the Class Members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### 8.    The Settlement Distributions are Fair, Reasonable, and Adequate.

As part of the scrutiny it applies to a class and collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008), *citing Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999).  In the present case, the settlement establishes two pools of settlement funds—one for the Rule 23 Class Members, including all who do not exclude themselves from the class but excluding the Section 216(b) Class Members, and one for the Section 216(b) Class Members, who affirmative opted into the lawsuit following conditional certification. This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by Class Members and will provide them with a proportionate share of the settlement funds.  Service Payment awards will be made to the Class Representatives, but those payments will not come from the settlement pools.  Likewise, Class Counsel will make a separate fee application to the Court, which will be paid by Defendant and not be taken from the settlement funds allocated to the classes.

       **a.**     ***The Individual Payments are Reasonable and Adequate.***

The formula used to calculate the amount to be paid to each Rule 23 Class Member (excluding Section 216(b) Class Members) is as follows:  payment equal to approximately 50% of the total overtime compensation allegedly due.  The formula used to calculate the amount to be paid to each Section 216(b) Class Member is calculated as follows:  payment equal to approximately 150% of the overtime compensation allegedly due.  These figures represent a fair and equitable resolution of the overtime claims.

       **b.**     ***Class Representatives' Service Awards are Reasonable.***

Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case."  *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374, *citing In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985); *see also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors

warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Defendants have agreed to provide a total of $5,750.00 to the Class Representatives as service payments. These individuals provided factual information to Class Counsel, faithfully communicated with Class Counsel, and subjected themselves to the responsibilities of serving as representatives in a lawsuit against their employer. Additionally, Class Representatives Mary Walburn and Misty Hall attended the mediation with Class Counsel. (Ex. B, Mansell Dec. ¶8)

Moreover, the proposed $5,750.00 Service Payment Amount is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, *20 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. 420 (M.D. Tenn. Oct. 17, 2014) (approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969, *4 (E.D.N.Y. May 12, 2016) (awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc*., 2013 U.S. Dist. LEXIS 152087, *4 (W.D. Wis. Oct. 23, 2013) (approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings*, 2016 U.S. Dist. LEXIS 39115, *6 (S.D.N.Y. Mar. 24, 2016) (service awards representing 5% of the settlement fund are "well within the range of service awards recently approved" in FLSA cases). Hence, the Service Payment Amount in this case is appropriate.

C.    **Final Approval of the Settlement under 29 U.S.C. § 216(b) is Also Appropriate.**

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").  Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1358, n.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-1354. Thus, if the proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Id.* at 1354.

In this case, as detailed above, the settlement was a result of arm's-length negotiations resulting in a reasonable, fair, and adequate resolution for the Section 216(b) Class.  The settlement pool allocated to the 24-member Rule 216(b) Class is $80,876.96.  The Section 216(b) Class includes current or former hourly employees of Defendant who, during the past three (3) years, did not receive overtime payment at a rate of one and one-half times their regular rate of pay for all hours worked in a workweek in excess of 40 and that filed a Notice of Consent to Sue in the Civil Action on or before December 31, 2019.  The $80,876.96 will be allocated among the Class Members based on the following formula:  payment equal to approximately 150% of the overtime compensation allegedly due each Class Member. These figures represent a fair and equitable resolution of the overtime claims.

Accordingly, the Parties request that the Court approve the settlement.

## IV.    CONCLUSION

For the reasons set forth above, the Parties respectfully request that this Court enter an Order as set forth in the attached Exhibit A.

Respectfully submitted,

/s/ *Greg R. Mansell*
_____
Greg R. Mansell (0085197)
*Greg@MansellLawLLC.com*
Carrie J. Dyer (0090539)
*Carrie@MansellLawLLC.com*
Kyle T. Anderson (0097806)
*Kyle@MansellLawLLC.com*
Mansell Law, LLC
1457 S. High St.
Columbus, Ohio 43207
Phone: (614) 610-4134
Fax: (614) 547-3614
**Attorneys for Plaintiffs**

/s/ *Meghan E. Hill*
_____ (via email authority)_____
Meghan E. Hill (0078183)
Shennan Harris (0091514)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street.
Columbus, OH 43215
Telephone: +1.614.365.2700
Fax: +1.614.365.2499

meghan.hill@squirepb.com
shennan.harris.squirepb.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing *Joint Motion for Final Approval of Class and Collective Action Settlement* has been filed via the electronic filing system on July 31, 2020. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the electronic filing system.

/s/ *Greg R. Mansell*___
Greg R. Mansell (0085197)